UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**MONSOOR ALI**<br><br>         **Defendant.** | **Crim. Action No. 1:24-CR-43 (LLA)** |

## MR. MONSOOR ALI'S MOTION FOR RELEASE FROM CUSTODY

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (*quoting United States v. Salerno*, 481 U.S. 739, 755 (1987))

Monsoor Ali, by and through counsel, respectfully requests that this Court order him released from custody pending trial, pursuant to the Bail Reform Act, 18 U.S.C. § 3142.

### Introduction

Monsoor Ali is a 46-year old man with Stage IV cancer. Specifically, he has been diagnosed with sinonasal undifferentiated carcinoma. According to Mr. Ali's sisters, it is a "rare and aggressive" form of cancer. Mr. Ali is currently in cancer treatment at Medstar Georgetown University Hospital. He recently underwent surgery and an aggressive round of chemotherapy. Now, he is prescribed radiation five times per week.

Mr. Ali was homeless for most of his adult life. However, for the past several years, he has maintained an apartment by himself. If released pending trial, Mr. Ali

1

has the option to return to his own home under strict conditions of release, or to move in with his sister, Ms. Michelle Nicholas. Ms. Nicholas, who will be present for Mr. Ali's detention hearing, is willing and able to closely supervise Mr. Ali should this Court allow Mr. Ali released under strict conditions.

On February 2, 2024, Monsoor Ali was arrested at his home in connection with an indictment charging him with one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4). The indictment specifies the date of the offense conduct as July 20, 2022. Presumably, this date is when the search warrant, signed by Magistrate Judge G. Michael Harvey on July 12, 2022, was executed. Mr. Ali was not indicted until September 2023, and was not arrested until January 2024, despite remaining at the same, known address where the search warrant was executed throughout this entire time.

The government now requests that Mr. Ali be held pursuant to 18 U.S.C. § 3142(f)(1)(A).  Because of the length of time since the conduct at issue in this case; Mr. Ali's exceptional medical needs; and the existence of a combination of conditions that will mitigate any danger to the community, Mr. Ali should be released.

**ARGUMENT**

I.    **Legal standard**

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will

reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §§ 3142(b), (c)(1)(B).

The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

The government bears the burden of demonstrating by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence that Mr. Ali be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g).

## A. The Nature and Circumstances of the Offense Charged

The nature and circumstances of the offense charged weigh in favor of release. Mr. Ali does not contest that the offense charged is a serious one. But the indictment does not allege any inappropriate contact between Mr. Ali and any minor or anything

more than possession of prohibited materials. Moreover, the offense conduct occurred more than 1.5 years ago, and the government has made no accusation that the conduct has continued in any way since that time. Mr. Ali has no history of any similar offenses. And Mr. Ali made no attempt to flee during the substantial period of time during which he knew he was under investigation for this conduct, before the government eventually indicted this case and arrested him. Strict supervision—not detention in a jail—is sufficient to ensure that Mr. Ali refrains from similar conduct and appears in court.

Another case pending in this district is instructive here. In *United States v. Jason Rehman*, 23-CR-64 (CJN), the defendant, who was 30 years old, was charged with, *inter alia*, Enticement of a Minor, for "sexting" with a 15-year-old minor victim and instructing her to send him lewd videos. Mr. Rehman allegedly admitted to traveling to having sex with the MV twice. The conduct alleged by the government occurred approximately 4 years before Mr. Rehman's arrest in that case. Mr. Rehman was released under strict conditions and has incurred no violations of release.[1]

While, like defendant Rehman's case, the nature and circumstances of the alleged offense here are undoubtedly serious, this factor does not militate in favor of pre-trial detention. Instead, there are conditions that will ensure the safety of the community and Mr. Ali's return to court.

---

[1] *See* 23CR64, ECF. No. 9, Order releasing Jason Rehman to the High Intensity Supervision program.

**B. The Weight of the Evidence**

The weight of the evidence counsels in favor of release, or is at least neutral in this case. The government has not yet provided any evidence, or proffer of what evidence may exist, in this case to the defendant.

Notably, there is no evidence or allegation that Mr. Ali engaged in any criminal conduct after July 20, 2022. Moreover, there is no evidence or allegation that Mr. Ali engaged in any criminal behavior other than possession of prohibited materials. This Court can fashion conditions of release to protect the community and prohibit Mr. Ali from any additional criminal conduct.

**C. Mr. Ali's History and Characteristics**

This factor weighs heavily in favor of release. Monsoor Ali has spent the past four years dealing with a constant onslaught of medical issues. During COVID-19 lockdown, Mr. Ali was diagnosed with Type 2 diabetes. This led to significant cardiac issues, and Mr. Ali has suffered from two heart attacks in the past four years. More recently, Mr. Ali noticed that he was losing sight in one eye. After many medical appointments to try to figure out what was causing the loss of sight and other symptoms, Mr. Ali was eventually referred to an oncologist, and was diagnosed with sinonasal undifferentiated carcinoma. By the time Mr. Ali got a formal diagnosis, he had Stage IV cancer.

Mr. Ali is now in treatment at Medstar Georgetown University Hospital. He had his malignant tumor removed, and just finished chemotherapy. Now, he is prescribed radiation therapy five times per week. Because of where he is right now

in his course of treatment, Mr. Ali is suffering from nausea, muscle weakness, limited mobility, and has been recommended to be on bed rest. With every day that he misses a radiation treatment, the odds increase that the cancer will be able to spread. In addition to his physical medical issues, Mr. Ali suffers from anxiety and panic attack disorder.

Mr. Ali was born and raised in the District of Columbia. His two sisters still live in the DMV. They are both willing to help him abide by his conditions of release and make sure he continues his cancer care with his chosen medical team. His sister Michelle Nicholas is willing to have Mr. Ali live with her, if necessary, and act as his third-party custodian. After experiencing homelessness for most of his adult life, Mr. Ali now has a stable apartment of his own where he's lived for about four years.

Mr. Ali's limited criminal history is from decades ago, and has no relation to the instant case.

Because of Mr. Ali's serious medical issues, personal characteristics, and strong family support, release is appropriate in this case.

**D. The Nature and Seriousness of the Danger to Any Person in the Community**

The conduct alleged against Mr. Ali is more than 1.5 years old. Mr. Ali is now very ill, and his focus is spending time with his family and fighting his battle with cancer. Any danger posed by Mr. Ali to the community can be mitigated with a combination of conditions. Specifically, Mr. Ali can be released on HISP to his sister's home, and forbidden from accessing the Internet. Mr. Ali is willing to accept any

condition, or combination of conditions, that will allow him to get treatment for his cancer at home and in relative peace.

## II.    Statistics Demonstrate That it is Extremely Rare for Federal Defendants on Bond to Flee or Recidivate

In this case, this Court should be guided by Administrative Office of the Courts statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond.[2] Significantly, this near-perfect compliance rate is seen equally in federal districts with very high release rates and those with very low release rates.[3] Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[4] The below chart reflects this data:

---

[2] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*,
No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).
[3] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019. *See* Ex. 2, AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42. The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15. The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands.
[4] *Id*



Despite the statistically low risk of recidivism that defendants like Mr. Ali pose, the government recommends detention in 71% of cases.[5]

Mr. Ali must be released because the government has not presented evidence that shows that, particularly given his Stage IV cancer diagnosis and the supervision his sisters are willing to provide, he would be among the approximately 2% of defendants who commit another crime while on pretrial release.

### CONCLUSION

For all of the reasons stated above, Mr. Ali should be released

Respectfully Submitted,

**MONSOOR ALI**

by counsel:

A.J. Kramer
Federal Public Defender for the
District of Columbia

---

[5] *See* AO Table H-3 (September 30, 2021), *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_h3_0930.2021.pdf.

_____/s/_____
KATE ADAMS
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500